IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OMEGA ADVISORS, INC. et al., <br><br> Plaintiff, <br><br> vs. <br><br> CLAYTON LEWIS, <br><br> Defendant. | Case No.: 06-cv-834 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR RECONSIDERATION**

| | |
|---|---|
| **LOWENSTEIN SANDLER PC** <br> Attorneys at Law <br> 65 Livingston Avenue <br> Roseland, New Jersey 07068 <br> 973.597.2500 <br> Attorneys for Clayton Lewis | **KROVATIN KLINGEMAN LLC** <br> Attorneys at Law <br> 744 Broad Street, Suite 1903 <br> Newark, New Jersey 07102 <br> 973.424.9777 <br> Attorneys for Clayton Lewis |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

BASIS FOR RECONSIDERATION ........................................................................................... 3

ARGUMENT ............................................................................................................................. 10

    I.     THE COURT OVERLOOKED SUBSTANTIAL EVIDENCE THAT
           THE CLAYTON LEWIS AND THE PHAROS ENTITIES WERE
           JOINTLY REPRESENTED WITH OMEGA ....................................................... 10

CONCLUSION .......................................................................................................................... 12

# TABLE OF AUTHORITIES

**PAGES**

**CASES**

*Eisemann v. Greene,*
204 F.3d 393 (2d Cir. 2000)..................................................................................................10

*In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974,*
406 F. Supp. 381 (S.D.N.Y. 1975) .......................................................................................11

*In re Initial Public Offering Sec. Litig.,*
399 F.Supp.2d 298 (S.D.N.Y. 2005), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., Inc.,* 2006 WL 1423785 (2d Cir. May 19, 2006).............................................10

*Johnson Matthey, Inc. v. Research Corp.,*
No. 01cv8115, 2002 WL 1728566 (S.D.N.Y. July 24, 2002) ..............................................11

*In re Lancaster Factoring Co. v. Mangone,*
No. M12-329, 1996 WL 706925 (S.D.N.Y. Dec. 9, 1996)...................................................12

*Polycast Tech. Corp. v. Uniroyal, Inc.,*
125 F.R.D. 47 (S.D.N.Y. 1989) ............................................................................................12

*SIPC v. Stratton Oakmont, Inc.,*
213 B.R. 433 (S.D.N.Y. 1997)..............................................................................................12

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber,*
327 F.3d 173 (2d Cir. 2003)....................................................................................................9

**RULES**

Civil Rule 6.3 ...............................................................................................................................1, 10

Pursuant to Local Civil Rule 6.3, Defendant Clayton Lewis respectfully submits this memorandum of law in support of his Motion for Reconsideration of the Court's February 11, 2010 Order (the "Order") denying without prejudice his June 9, 2009 Motion to Compel Discovery (the "Motion") from Plaintiff Omega Advisors, Inc. ("Omega").

## PRELIMINARY STATEMENT

A party asserting the attorney-client privilege as justification for withholding responsive documents from disclosure bears the burden of demonstrating that the privilege exists. If the party asserts that the privilege was not waived, it bears the burden of showing that non-waiver. In Mr. Lewis's briefs in support of his Motion to Compel disclosure of allegedly privileged documents concerning the Azeri investment at the heart of this action, he demonstrated that he and his Pharos companies were jointly represented by Omega's counsel in connection with that investment.[1] Mr. Lewis submitted a substantial record of communications, payments, and various public statements, a record that he was able to compile despite Omega's continuing failure to produce responsive documents that would be relevant to the existence of the privilege (such as Omega and Pharos records reflecting financial transactions between and among Pharos, Omega and Schulte, Roth & Zabel) and Omega's grossly inadequate privilege logs (which fail to specify the author, recipient or date of critical communications involving advice sought by Mr. Lewis for Omega and his companies). In response to this showing, Omega came forward with nothing other than the self-serving statements of its lawyers, and letters reflecting the same self-serving statements. These statements are flatly contradicted by the documentary record, and they do not suffice to meet Omega's burden.

The Order denied the Motion "without prejudice for the reasons stated at a conference held on February 11, 2010." During that conference, the Court rejected Mr. Lewis's argument

---

[1] Mr. Lewis respectfully disagrees with other conclusions in the Court's February 11, 2010 ruling, which he reserves the right to revisit at the appropriate time in the appropriate forum. In compliance with Local Civil Rule 6.3, however, this motion for reconsideration is narrowly focused on the joint representation argument, a particular factual issue which was before the Court on this Motion, and which appears to have been overlooked.

that Mr. Lewis and Pharos Advisors, L.L.C. were jointly represented with Omega by, among other law firms, Schulte Roth & Zabel LLP ("Schulte"), stating, "I was not persuaded by the payment argument," Tr. at 42:6, and, "[O]ne payment doesn't make an attorney-client relationship. . . . [T]here are no engagement letters other than with respect to Pharos in terms of its formation," Tr. at 49:3-6. These statements suggest that the Court overlooked the substantial additional evidence of joint representation that was then before the Court.

As the Court observed at the conference, there is no disputing that Omega's attorneys gave Omega "Foreign Corrupt Practices Act advice given that it's an investment in a foreign country." Tr. 21:14-16. Mr. Lewis is the person who actually sought the advice on behalf of Omega and his own companies. The point of the Motion was and is that, because Pharos and Mr. Lewis were represented and advised by those same lawyers at those same times, they are entitled to disclosure of all such communications concerning the Azeri investment.

When this issue was first raised before Judge Sprizzo earlier in this litigation, both he and Omega's counsel recognized that it raised substantial and complicated questions. In a discovery conference held by the Court on September 11, 2007, in response to the direct question by the Court, "Do you dispute the joint counsel representation?", Omega's counsel specifically admitted that he does not "dispute that at certain bands of time there was a joint representation. But that was not across the board. It is fairly complicated." Transcript of Conference, dated Sept. 11, 2007, at 36:4-6. Judge Sprizzo responded, "At some point of time we will reach that issue. When he tells you he wants the particular documents of the underlying work that was done, then we will have to have a specific objection under the rules to each item demonstrating that it is privileged. We will have to have a hearing on it." Id. at 36:7-11.

Omega has utterly failed to meet its burden. The extensive paper record compiled and presented to the Court in support of the Motion shows that the joint representation issue can be decided as a matter of law in favor of Mr. Lewis. If the Court is not convinced, this issue at the very least merits further factual development and, as Judge Sprizzo stated, requires findings of fact by the Court with respect to the joint representation and the application of the privilege. The

Court should reconsider its Order rejecting the joint representation theory, and direct disclosure of all the requested documents concerning the Azeri transaction.

## BASIS FOR RECONSIDERATION

On February 11, this Court denied the Motion, expressly stating that the denial was "without prejudice to doing two things: One, Mr. Lewis presumably is now free to put in an affidavit and give us the specifics which are so wholly lacking here. And, two, for counsel to get a hold of the evidentiary record from the trial because there may be obviously information in that that would shed some light that's missing from the record that we have." Tr. at 21:20-25. Accordingly, at this time, counsel for Mr. Lewis are working to obtain from the Government a set of trial exhibits from the criminal trial of Frederick Bourke, as well as permission for Mr. Lewis to offer a sworn statement reflecting the specifics underlying the Motion.

The Court appeared to base its holding on the existence of a potential "much easier big across-the-board argument which really wasn't fleshed out in the papers." Tr. at 49:16-17. Noting that Omega had produced documents to the Government in connection with the criminal trial of Frederic Bourke, and that some of those documents were then introduced into evidence at trial, the Court speculated that, after reviewing those trial exhibits, the parties might conclude "that what was introduced is sufficiently comprehensive so that Omega may conclude that the additional documents are not meaningfully distinct from what was -- what had become public evidentiary material and the issue may die." Tr. at 41:21-25. This motion for reconsideration addresses a different issue than that addressed by the Court relating to the trial exhibits. In this motion, Mr. Lewis respectfully submits that, based on the factual record already before the Court but apparently overlooked, the Motion should have been granted without need for renewal.

The background facts are set forth in greater detail in the papers in support of the Motion, and are summarized here for ease of reference. Clayton Lewis was an Omega senior employee centrally involved in the Azeri investment from which this litigation arises. Simultaneously with his role at Omega, Mr. Lewis was also the managing member of Pharos Advisors, L.L.C., a

separate investment management entity that directed co-investment alongside Omega in over a hundred transactions, spanning more than two years, including the Azeri investment. Columbia University and AIG were clients and investors of Pharos, not Omega, in connection with the Azeri transaction. In addition, Mr. Lewis was a participant in Omega's deferred compensation pool, through which he personally invested approximately $1 million in Azeri privatization vouchers and options.

In connection with his ownership and membership in Pharos Advisors, L.L.C., Mr. Lewis engaged and paid for Schulte as his firm's outside legal counsel. This relationship was initiated at the creation of Pharos and continued past Mr. Lewis' departure from Omega in 1998. It is clear error to conclude that Schulte was retained solely by Pharos to write the constituent fund documents of the Pharos entities (which clearly denominate Schulte as the funds' counsel for continuing advice). The billing records show that Pharos received legal advice, both alongside and independent of Omega, in connection with the Azeri investment, including with respect to the Foreign Corrupt Practices Act ("FCPA"). Furthermore, in connection with his personal investment through the deferred compensation pool, Mr. Lewis paid directly for legal services rendered in connection with the Azeri privatization investment and the legal and regulatory aftermath of the investment. In support of the Motion, Mr. Lewis adduced the following evidence of joint representation:

1. A June 25, 1997 letter agreement between Leon Cooperman, Omega's founder, and Mr. Lewis, providing that that (i) Pharos would use Omega's offices, administrative personnel, and legal counsel and Omega would charge Pharos a fee for the shared use of those services, and (ii) Omega would allocate directly to Pharos's investors a portion of legal fees incurred in connection with common investments as allowed by the operative fund documents. (Thompson June 9, 2009 Affirmation Ex. D)

2. A Confidential Offering Memorandum, Limited Partnership Agreement, and Subscription Documents for Pharos, dated June 1997, stating that Schulte Roth &

Zabel LLP was counsel to all of the Pharos entities "in connection with this offering of Interests *and subsequent advice*" to *all* of Mr. Lewis's Pharos entities, including Pharos Advisors, L.L.C. (Thompson June 9, 2009 Aff. Ex. E; Thompson Aug. 3, 2009 Reply Affirmation Ex. C) (emphasis added)

3. A redacted Schulte billing record, dated March 24, 1998, indicating that a Schulte attorney had a conference with David Bloom (Omega's general counsel) and Clayton Lewis clearly concerning some matters related to the Azeri investment. (Thompson Aug 3. 2009 Reply Aff. Ex. B.)

4. Privilege log entries, reflecting no date, author or recipient, comprising a "Memorandum reflecting legal advice concerning inquiries of Clayton Lewis" (Bates No. USAOP 53442) and a "Memorandum concerning areas of inquiry of C. Lewis, reflecting legal advice" (Bates No. USAOP 55351-52). (Thompson Aug. 3, 2009 Reply Aff Ex. B at 8, 17)

5. Pharos bank records showing that Pharos paid Schulte for legal services in March, June, September and December 1998, at least three of which are clearly for work performed in 1998, and which evince payment by Pharos of a *pro rata* share of the legal fees for Schulte Roth & Zabel's legal advice concerning the Azeri investment. (Thompson Aug. 3, 2009 Reply Aff. Exs. C, E) Contrary to the Court's finding at the conference, these bank records evidence at least four payments by Pharos to Schulte during the critical time period of the Azeri investment, and indicate Pharos paid for its pro-rata portion of *all* work done on the Azeri transaction, as opposed to a single isolated payment.

6. A November 25, 1998 letter from the Schulte partner responsible for the Omega relationship to Mr. Lewis enclosing an invoice for work performed by Schulte for Pharos. The invoice is for work performed for Pharos in August and September 1998, and includes work executed for Pharos after Mr. Lewis's departure from Omega, evincing the relationship that existed directly between Pharos and

Schulte. The Schulte partner concludes the letter by saying "I look forward to continuing to work with you." (Thompson Aug. 3, 2009 Reply Aff. Ex. F.)[2]

7. A letter dated November 26, 1996 from Schulte "on behalf of Pharos Advisors, L.L.C." to David Bloom, Omega's general counsel, concerning certain notices of claim for exemption to be filed on behalf of Pharos with the Commodity Futures Trading Commission and the National Futures Association. (Thompson Aug. 3, 2009 Reply Aff. Ex. C)

8. A letter dated December 3, 1996 from Schulte to the Commodity Futures Trading Commission enclosing the Notice of Claim for Exemption "on behalf of Pharos Advisors, L.L.C." (*Id.*)

9. An August 22, 1997 fax from Schulte to David Bloom regarding certain disclaimer language to be included in a Russian investment fund's offering memorandum, reciting that Pharos is a separate entity. (*Id.*)

10. Detailed time records relating to Schulte work in 1998 billed through Omega reflecting work performed by Schulte lawyers on "Iinv. [*sic*] mgmt. agmt. between Pharos Cap. Mgmt. and Columbia" in April, work on "Columbia agmt." (a Pharos responsibility) in April, work on AIG investment (a Pharos client) in June, and an entire Pharos billing matter number under the Omega client number that was opened by Schulte in 1996, indicated on the page bearing Bates No. OMEGA322841. (Thompson Aug. 3, 2009 Reply Aff. Ex. G) It is beyond dispute that both Columbia and AIG invested in the Azeri transaction through Pharos, not Omega, and these records therefore show work done by Schulte for Pharos in connection with the Azeri transaction.

---

[2] As Omega's counsel pointed out, Schulte did in fact enter into engagement agreements with Pharos in 1999 and 2000, after the alleged fraud and the alleged investigation by Schulte of Mr. Lewis, concerning other matters. Plaintiffs' Opposition to Motion to Compel Discovery, dated July 6, 2009, at 15. These agreements have never been produced by Schulte or Omega.

11. Invoices, Omega internal documents, and billing records from Weil Gotshal & Manges LLP showing that Weil performed legal work for Pharos, Omega billed Pharos and processed payments for that work, and Pharos paid Weil directly for some of that work. (Thompson Aug. 3. 2009 Reply Aff. Ex. H.)

12. A letter and summary billing records – sent by Omega Overseas Partners, Ltd. to Mr. Lewis on February 3, 2006, the day after he was served with the Complaint in this action – seeking *pro rata* reimbursement for legal fees incurred in connection with Mr. Lewis's investment in the Azeri privatization vouchers through Omega deferred compensation plan, specifically including over $400,000 in fees charged by Schulte Roth & Zabel in connection with the "Azeri vouchers and options matter, and regulatory matter." Thompson June 9, 2009 Aff. Ex. F. Mr. Lewis paid his share of the fees. Thompson June 9, 2009 Aff. Exs. G, H, I, J.

Most of this evidence was presented for the first time on reply because Omega failed to produce it, despite repeated requests, until approximately one week after Omega filed its brief in opposition to this Motion. Furthermore, as indicated in his papers, Omega still has not yet produced requested documents critical to the resolution of this issue, nor, apparently, has Omega conducted inquiry of its employees that would have material knowledge on this matter, despite numerous written requests by Mr. Lewis. *See* Thompson June 3, 2009 Aff. ¶ 46; Reply Br. at 7-8 & n. 8-9. To the extent that such documents are absent, or that privilege logs or redacted documents lack specificity, such failures should be held against Omega, which bears the burden of establishing the privilege, not Mr. Lewis.

This evidence on the issue of the joint representation flatly contradicts Omega's statements in its opposition brief, as well as Schulte's statements in its letters to Mr. Lewis's counsel. In its opposition papers, Omega took the position that "Schulte entered into a limited engagement with Pharos in 1999 and 2000, which included engagement letters, with regard to a narrow issue concerning custody of the vouchers and options after the investment failed" and that "Schulte also did a limited amount of work in 1997 in connection with the formation of the

-7-

Omega Local Markets fund which was advised by Pharos." Plaintiffs' Opposition to Motion to Compel Discovery, dated July 6, 2009, at 15-16. (Note that this latter argument ignores the fact that a Pharos entity was a general partner of, not merely an advisor to, the Omega Local Markets Fund. *See* Thompson June 9, 2009 Aff. Ex. E, at 3.) In her December 2008 and February 2009 letters to Mr. Lewis's counsel in response to their efforts to obtain discovery from Schulte, Betty Santangelo, Esq., a Schulte partner, took a similar position that "SRZ's representation of Mr. Lewis/Pharos was not a general engagement in connection with the Azerbaijan investment, which took place in 1998," that "Schulte did not provide legal 'services' to Pharos in 1998," and that "Our representation of Pharos . . . was extremely limited." Declaration of H. Bradford Glassman in Support of Opposition to Motion to Compel Discovery, dated July 6, 2009, Exs. 6-8. It appears that Ms. Santangelo was misinformed about the work her firm had done, as her statements were completely inconsistent with documents turned over to Lewis by Omega, one week after the filing of its brief in opposition to the Motion.[3]

In its opposition brief, Omega argued, without a single citation and without acknowledging the information it would produce to Mr. Lewis a week later, that the evidence of payments and invoices by Pharos throughout the time period of the Azeri investment in 1998, "is not a basis to find an attorney-client relationship or a joint representation." Opp. Br. at 18. Even without this evidence of invoices and payments, however, Omega's and Schulte's arguments would necessitate the absurd belief that the Pharos funds run by Mr. Lewis, which co-invested $25 million in the Azeri investment separately from Omega, somehow decided to make that investment without obtaining *any* of the legal advice that Omega's counsel argued, at the February 11 conference, constituted "ordinary FCPA due diligence that any competent lawyer

---

[3] Similarly, Mr. Glassman's letter to the Court on March 30, 2009, concerning Schulte's role, is directly contradicted by the documents subsequently produced. *See* Glassman July 6, 2009 Aff. Ex. 2. This letter indicates that Ms. Santangelo had little role in the Azeri transaction during 1998 or the subsequent internal investigation, which may explain why she had no first-hand knowledge of the work her partners had done with Mr. Lewis and Pharos. *See id.* at 2.

would do for its client in a situation where it's doing an investment in a third world country that has corruption problems and so forth." Tr. at 20:4-7.

To the contrary, Mr. Lewis was intimately involved with communications with Schulte and other attorneys in connection with the Azeri investment throughout the critical period, and he participated in such communications on behalf of both Omega and Pharos. *See* Memorandum of Law in Support of Defendant's Motion to Compel Discovery, dated June 9, 2009, at 4-5, 17-18 (citing evidence in support). Given the admitted involvement of Omega, Schulte and other counsel with the formation, maintenance and ongoing investment activities of Pharos in the Azeri investment, Omega's and Schulte's arguments that they somehow did not consider both Mr. Lewis and Pharos to be recipients of this legal advice concerning the Azeri investment is profoundly disingenuous and flatly impossible, as a matter of law.

During the Azeri transaction, Mr. Lewis could never have anticipated that all the attorneys with whom he was working closely would later refuse to recognize Pharos as a client, withhold all the communications and work product related to the investment, and prevent him from obtaining evidence of the parties' state of mind, among other facts, at the time of the investment. Thus, far from being a "fishing expedition" without "fundamental credibility," Tr. at 11-12, the Motion was founded on the existence of specific communications (portions of which appear to be reflected in the deficient Omega privilege log and the heavily redacted Schulte billing records that were before the Court), the operation of common sense, and considerations of fairness.[4]

---

[4] In this connection, we note that Mr. Lewis's criminal FCPA guilty plea to the Court, which arose from his cooperation agreement with the Government, in no way precludes him from asserting that his and Omega's state of mind with regard to the Azeri transaction was informed by advice of counsel, *see Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 181, 183 (2d Cir. 2003), contrary to certain statements by the Court at the February 11 conference. *See* Tr. at 11:11-12:6, 14:22-15:4.

## ARGUMENT

This motion for reconsideration does not seek to relitigate all of the arguments raised in the Motion and rejected by the Court. It is narrowly focused on a particular factual matter that the Court appeared to overlook in issuing its Order.

A motion for reconsideration pursuant to Local Civil Rule 6.3 is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources," *In re Initial Public Offering Sec. Litig.,* 399 F.Supp.2d 298, 300 (S.D.N.Y. 2005) (internal citation and quotation marks omitted), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., Inc.,* 2006 WL 1423785 (2d Cir. May 19, 2006), and appropriate only when a court overlooks "controlling decisions or factual matters that were put before it on the underlying motion" and which, if examined, might reasonably have led to a different result. *Eisemann v. Greene,* 204 F.3d 393, 395 n. 2 (2d Cir. 2000). Under these stringent standards, this Motion for Reconsideration should be granted, because the Court overlooked factual matters put before it on the underlying Motion that might have led to, and indeed mandated, a different result.

### I. THE COURT OVERLOOKED SUBSTANTIAL EVIDENCE THAT CLAYTON LEWIS AND THE PHAROS ENTITIES WERE JOINTLY REPRESENTED WITH OMEGA

The Order states that the Motion was "denied without prejudice for the reasons stated at a conference held on February 11, 2010." The evidence showing that Clayton Lewis's entities were jointly represented with Omega in connection with the Azeri investment is far more voluminous than "one payment," or "engagement letters . . . with respect to Pharos in terms of its formation." Tr. at 49:3-6. In his Motion, Mr. Lewis presented a large volume of material, as set forth above, showing that his Pharos entities were jointly represented with Omega in connection with the Azeri transaction by Schulte Roth & Zabel, LLP, Weil Gotshal & Manges LLP, Cleary Gottlieb Steen & Hamilton, and von Meiss Blum & Partners. He also showed that he personally paid, on a pro rata basis, for the extensive legal bills associated with the legal advice received by the Omega deferred compensation fund in connection with the Azeri transaction.

As set forth more fully in his papers in support of the Motion, once a joint representation is formed, common clients may retain privilege in relation to the outside world, but the privilege cannot be exercised between the former joint clients if they "subsequently face one another as adverse parties in litigation brought by any one of them." *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F. Supp. 381, 393 (S.D.N.Y. 1975). Thus, "what is divulged by and to the clients . . . cannot be deemed to be confidential inter sese; in any later controversy between or among those clients, the privilege could not stand as a bar to full disclosure at the instance of any one of them." *Id.* at 386.

Here, Omega and Pharos entered into a classic joint representation arrangement -- they had a common and shared interest in pursuing over 100 emerging market investments together, including the Azeri investment opportunity. They pooled their collective resources by sharing the costs of outside counsel. This is not surprising. As set forth clearly in the confidential offering memorandum that was before the Court, Leon Cooperman, Omega's founder and CEO, held a substantial ownership and investment interest in Pharos Advisors, L.L.C., even though Mr. Lewis was the managing member. *See* Thompson June 9, 2009 Aff. Ex. E at 2. Outside counsel (and Omega's in-house lawyers) provided legal advice to Omega and to Pharos in connection with the investment, drafted and reviewed transactional documents, and communicated with principals and employees of both Omega and Pharos. See Thompson June 9, 2009 Aff. Exs. B (at 15-19, 22-24), K, L, M & O. In addition, Omega and Mr. Lewis had entered into an agreement pursuant to which the expense associated with outside counsel was to be shared between them. See Thompson Aff. Ex. D. Accordingly, Omega and Mr. Lewis shared joint representation.

Now that they are adverse to each other in civil litigation, Omega cannot invoke privilege to withhold documents from Mr. Lewis in relation to the joint legal advice they received. *See Johnson Matthey, Inc. v. Research Corp.*, No. 01cv8115, 2002 WL 1728566, at *7 (S.D.N.Y. July 24, 2002) ("Although the common interest exception bars the disclosure of such communications to third parties, it does not affect the rights of a party's former joint defense

partner in subsequent litigation involving the two of them."); *SIPC v. Stratton Oakmont, Inc.*, 213 B.R. 433, 437 (S.D.N.Y. 1997) ("[T]he few cases and voluminous commentary that do address the issue state that subsequent litigation inter sese operates to waive the joint defense privilege in both contexts."); *In re Lancaster Factoring Co. v. Mangone*, No. M12-329, 1996 WL 706925, at *3 (S.D.N.Y. Dec. 9, 1996) (same); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 50 (S.D.N.Y. 1989) (same). *See generally* Memorandum of Law in Support of Defendant's Motion to Compel Discovery, dated June 9, 2009, at 16-18; Reply Memorandum of Law in Further Support, dated August 3, 2009, at 5-8.

Accordingly, the Motion should have been granted, and Mr. Lewis is entitled to production of all documents in Omega's possession reflecting these firms' legal advice and communications concerning the Azeri transaction.

## CONCLUSION

For the foregoing reasons, Defendant Clayton Lewis respectfully requests that the Court grant the foregoing Motion for Reconsideration and that the Court grant his Motion to Compel production of documents and communications reflecting legal advice and attorney work product concerning the Azeri privatization investment.

Dated:  February 24, 2010                           Respectfully submitted,

                                                    **LOWENSTEIN SANDLER PC**


                                                    By:  /s/ R. Scott Thompson
                                                         R. Scott Thompson (RT-6750)
                                                         Matthew M. Oliver (MO-2852)
                                                         65 Livingston Avenue
                                                         Roseland, New Jersey  07068
                                                         973.597.2500
                                                         Attorneys for Clayton Lewis